A. 16-20465, Associated International Insurance Company v. Scottsdale Insurance Company. Oh, this was a surprise to me. This one. Oh, okay. I learned a lot about privilege. All right. Mr. McKinney, whenever you're ready. May it please the Court. Good morning, Your Honors. My name is Chris McKinney. I represent Associated International Insurance Company, individually and as subrogee of its insured, Alpha Barnes Real Estate Services, LLC. The issue before the Court today is standing. Particularly, does Associated have standing to seek reformation of Scottsdale's policy while Associated is standing in the shoes of Scottsdale's insured? The very simple answer to that question is yes. This Court has Let me ask you this because there's one argument that the It's always interesting when insurance companies sue each other because they're making law they may or may not ultimately like, but that's fine. I'm sure Scottsdale has been a subrogee in the past, but that's fine. Coming back to the issue at hand. One of the arguments they make is, okay, you stand in the shoes, but now you're asserting something for your insured that goes beyond this case. In other words, you're not just walking into the shoes to say this other guy caused the car wreck that I finished paying for, and he should reimburse me for the medical bills that I paid. You're walking in and trying to redo an insurance policy that then has premium consequences and other consequences for your insured. How do you address that question? There's probably a two-part answer to that question. First, with respect to how broad Associated's rights are under the notion of subrogation, we can look to the contractual language, which says the insured has rights to recover all or part of any payment we have made under this policy. Those rights are transferred to us. Now, what Scottsdale suggests is that those rights include only a claim for breach of contract that Associated can sue only on the contract as it was eventually reduced to writing when the Scottsdale policy was bound. And I submit to the court that that's not the case, that subrogation is, as articulated by this court, a transfer of any cause of action. As articulated by Texas courts, a transfer of all rights and remedies. So when Associated is subrogated to the rights of its insured, it's subrogated to all the rights that are necessary to recover the amounts paid by Associated that should have been paid by Scottsdale. So that's the first part of that. The second part, to answer your question about how this might affect premiums, we're just simply not to that stage. And I say that because if we get into this case and the evidence is that there was no mutual mistake, that it was a unilateral mistake, Scottsdale had no idea in the world, then the court should not reform the policy. And then there's no detrimental effect on Scottsdale. Scottsdale charged the premiums it intended to charge, which would not have included this property. We're not there yet. There's been no discovery. And if you do prevail here and go back and fight out this mutual mistake, and if you were ultimately able to show a mutual mistake, that would only be saying we're reforming the contract to what the insured meant at the time? That's absolutely correct. I mean, you're not creating a new contract under that theory. It's bringing the contract back to what was originally agreed to. That's correct. We maintain, Associated maintains, that the contract is the agreement between Alpha Barnes and Scottsdale. The mutual mistake caused the policy to be bound without the property that's at issue in the underlying laws. But maybe for strategic reasons the insured likes this mistake that happened. Let's assume it is a mistake. And then say, you know what? It might not give us coverage in this case where the insurance company wants it, but it's keeping our premiums a lot lower, so let's just lay low and not bring this mistake to anyone's attention. Why doesn't it have that right? Or let's put it another way. Why do you have the right to make that decision instead of the insured? Associated has that right because Alpha Barnes' rights against Scottsdale have been transferred. They were transferred at the time that Associated made a payment to resolve the liability of Alpha Barnes. And that's either contractually through the language in the Associated policy or under principles of equity. I'm going to have you repeat that, but I want to know how Associated gets into prompt privity to this contractual relationship or how Scottsdale gets into privity with the contractual relationship with the insured. Yes, Your Honor. And that's a very important point because under Texas law, for a party to pursue a claim for reformation, that party has to be in privity with one of the original parties to the contract. Here, Associated is in privity to that contract through Alpha Barnes. Texas law is clear, and I believe the law of almost any jurisdiction is clear, that an assignment creates privity. Here, Alpha Barnes, the insured, Alpha Barnes' rights were transferred. They were assigned to Associated. And that establishes the privity necessary to sue for breach of contract or for reformation of that contract. Don't they have to have – why does Scottsdale come into this? It is the Scottsdale – Scottsdale issued the policy to Alpha Barnes. So it's a two-party contract, Scottsdale and Alpha Barnes. I understand, but it didn't include this particular place. The policy as ultimately written did not include this property. It's the position of Scottsdale that the parties intended for that policy to cover the property, but as written it did not.  Yes, Your Honor. It's Associated's position that Associated steps into Alpha Barnes' shoes and says, I now am Alpha Barnes, and Alpha Barnes now says the Scottsdale policy that I, Alpha Barnes, got should have covered this property and then didn't because of mutual mistake, and Scottsdale says, uh-uh, policy is as written. And that's the debate that you want to have in the district court that you haven't yet because of this whole standing issue, and that's where this whole subrogation-slash-privity-slash-assignment-slash-everything-else comes from. That's all I understand. Now, under Texas law – and incidentally, this is brand new to me. Oh, I've had a lot of subrogation cases, but not this one. Under Texas law, doesn't Scottsdale have some role or requirement to be subject to this privity? I apologize. I'm not sure I understand your question. Well, how do you – what if your client sues a very large – sues Prudential because Prudential's got a lot of money? And they say, well, we intended to bring Prudential into this coverage of this destroyed property. That wouldn't do it. That wouldn't bring Prudential in. You've got to prove a ground for reforming the contract if you prevail in this case. That is correct, Your Honor. If this case is remanded – Then what's a part of this predicate to prove privity? Now, doesn't that have to involve Scottsdale somehow? The privity is created when Associated steps into the shoes of Alpha Barnes because Alpha Barnes was in privity with Scottsdale in the Scottsdale policy. So privity is between – because of Barnes' insured relationship and intention with Reverend Scottsdale, unknown to Scottsdale, clearly foreign to their knowledge or participation. But that's enough privity to entitle them to a lawsuit or the next lawsuit to try to reform the policy. Your Honor, it's the contention of Associated that these facts were not unknown to Scottsdale, that it was the mutual intent of Scottsdale and the insured to include the property at issue in the underlying suit. Now, we haven't developed those facts yet. I'll accept that as the answer. Okay. And I apologize if I didn't answer that directly because I may have misunderstood you. But we're not here today asking the court to – If you get to the merits on remand, the debate's going to be, did Barnes and Scottsdale Insurance have a mistake? May both make a mistake? That'll be the inquiry, even though you're bringing the case. It'll be focused on the two parties to the contract. That's correct. The only involvement of Associated would be the fact that Associated has paid amounts on behalf of Alpha Barnes, and those would be the amounts that are sought by way of recovery. And – Let me ask you about something I think is surprising about this case. As Judge Reveley said, there's tons of subrogation cases out there. There's tons of insurance cases out there. And yet neither party – and I haven't been able to find one – whether a subrogee can bring a reformation action. I haven't found a case either way, rejecting it or accepting it. So I don't know which way that cuts. But it just seems surprising to me if this is – I take it your argument is this is pretty simple. This subrogation is a form of assignment. The Texas Supreme Court says a subrogee stands in the shoes, so we're standing in the shoes. Why isn't there a case at all out there on this? Your Honor, I can't answer that question. I can tell you that I have researched this issue exhaustively. My associate has researched it, and I assume Scottsdale's attorney has. And we have not found a case on point under Texas law or under Fifth Circuit law at all. I will say when I used to do insurance cases that insurance companies amongst themselves often had intercompany arbitration agreements, and they would try to settle up with a plaintiff, an injured plaintiff or whatever, and then go fight it out in an arbitration proceeding. So that may not be the answer to the question that Judge Costa asked. But there is a lot of insurance stuff that there seems to be. There should have been cases on it, and there weren't. And I think some of it is because this world of intercompany arbitration resolves some of these interinsurance company debates and disputes when the insured is no longer personally claiming something or the injured plaintiff, say, in a car accident or mass tort or whatever. I think that's true. I think a lot of times these get worked out out of court. In this case, and this is not necessarily part of the record, but to give some context, this suit was filed before the underlying lawsuit was resolved. And the suit initially was just sought to determine coverage under the Scottsdale policy and to determine a priority of coverage as between Scottsdale and Associated. After this lawsuit was filed and after Scottsdale had answered, the underlying lawsuit was settled. There was an amended complaint filed. And that's how we got into this subrogation interest in recovery. And I just want to be clear when we're just at the procedure of this. The trial judge did not actually make findings of fact, hold any kind of hearing, consider any evidence. It was simply on the pleadings a finding of no standing. So we have to look at the four corners of the pleadings to say is there standing or is there not based upon the allegation. The allegation plus law. That's correct, Your Honor. There was no extraneous evidence considered. This was entirely on the pleadings. So there's no facts we need to defer to, you know, because in these subject matter jurisdiction cases the judge can find, can make findings of fact necessary to determine subject matter jurisdiction. I didn't see that that was done here. Okay. So what we're looking at is just what's in the pleading and is that enough to get you over this standing hump to get into the bucket that the other two judges have been asking about. I'm happy to concur. That's correct, Judge. And I'll say the original trial court's order articulated no basis for the dismissal. We filed a motion for reconsideration. And the order on the motion for reconsideration articulated that the basis was the lack of standing because of lack of privity in this contract. On the face of the pleading, though. Because I don't even think we have the policy. We just have your quote from it. That's correct. There's policy language quoted in Associated's complaint, but the policy was not attached as an exhibit. Your Honors, we respectfully request that the judgment of the trial court be reversed and the case be remanded for further proceedings, and I respectfully reserve the remainder of my time. Okay. Yes, you've saved time for rebuttal. And we'll now hear from counsel opposite. If you can pronounce your name for me, I don't want to get it wrong. Giacco, Your Honor. Giacco. All right. May it please the Court, my name is Kyle Giacco, along with Allison Miller, my partner. We're here to represent Scottsdale Insurance Company. Yes, Your Honor, sometimes we get into fights with insurance companies where we take positions and determine it can be a case. Oh, I mean, you're entitled to that. It's just always interesting to me. I love insurance cases because I used to do them, and that makes me very nerdy and very strange. So please, go ahead. And I have been saying for a long time, this is an argument only an insurance nerd lawyer could love. You got one. At least one up here. The interesting part about this is, subrogation is not an assignment. Subrogation is not a complete assignment of all of an insured's rights. It is and has long been held under Texas law that subrogation gives indemnity and no more. This was said in 1891 and reiterated in 1992 in American Centennial v. Canal. Subrogation is for indemnity and nothing more. It's about the recovery of money. Associated's own policy says it limits the transfer of rights to the amount of money paid. It doesn't transfer any equitable rights. Well, okay. I mean, the point is, so let's take the typical case where this comes up, which is my health carrier pays for all of my auto accident surgeries and problems, which I didn't have, but I'm just a hypo. So all of that, and then they want to sue the negligent driver that hit me. They can't recover more than they paid me. So if they paid me $100,000 or paid my medical bills, whatever, $100,000, and I have damages of a million, I get the $900,000. That's what those cases are about, that you can't, as the insurance company, get more than you paid out on the claim. So it isn't a complete assignment of all damages, like my million that I should recover. I have to give $100,000 to the insurance company, but the other $900,000 come to me because they didn't pay more than $100,000. That's what that's talking about. And it's more than that, Your Honor, because those same cases hold you can't get punitive damages. You can't get statutory damages. You cannot get remedies other than the amount of money you paid. But this is a remedy meant to get to the money, okay? So that's what they're trying to do. They want to reform the policy to say that it did cover this and get their money and no more. If there's something else out there, they're not trying to get it. They just want the money they paid out for Barnes. So how is that different from any of these other weird situations that arise? Because as this Court has pointed out, the ramifications of amending the contract have effects beyond just their recovery. But why do you care? Why isn't that the insured's problem? The insured can intervene and go, I don't want the reformation, or this upsets me, or I'm going to file an insurance code 541 violation for messing with me or whatever. I mean, why isn't that something you aren't in charge of worrying about, what the insured thinks on this? In this case, among other things we're concerned about is this case was brought many years after the policy. It was more than four years after the policy was issued by a party who is a complete stranger who doesn't know the facts and intent of the formation of the policy. The insured chose not to pursue this mutual mistake. The underlying primary carrier chose not to pursue this mutual mistake. This was not raised until well after four years after our policy was even issued. Okay, but four years after sounds like limitations, which is a merits argument. I mean, you're here on a very narrow, narrow, narrow, narrow point. You may have 50 million great defenses to this reformation claim and may ultimately win it, but you're saying they don't even get in the door, and that's all we're looking at. Do they get in the door? Now, once they get in the door, they may be wiped onto the floor, but do they get in the door? That's all we're dealing with. And the question about whether they get in the door, the court is correct. There is no Texas case particularly specifically on point, but the courts have said that for seeking reformation you have to be in privity to the contract. The closest case on point is this Merrimack case that's been cited by both parties and by the judge. In that case, an insurance company had tied how much it had to pay under the insurance policy to a contract between a mortgager and a party that was buying a house. There was, during the course of the sale, a fire. The contract for sale was supposed to have been amended according to the two parties to the contract to say that it really was just for the post value of the house and that it would be over the amount of the insurance was what they were going to pay, not the full value of the house. Those two parties went to reform the contract. The court in that case said the insurance company, while it had a substantial interest, in the outcome of that case had no right to either enforce that underlying contract or object to the reformation. And that's the closest Texas law we have on here. So what our argument here today is what the right of subrogation constitutes a substantial interest, not privity. And Texas law says it has to be privity and not a substantial interest. The case law says you stand in the shoes. Are there any other examples you can think of where a subrogee's rights are limited? I understand we already talked about they can't get more than they paid out themselves. But other than limiting their recovery to the amount they paid out, can you think of any other rights a subrogee is not able to assert that the insured herself would be able to assert? The case law addresses things like statutory damages, that even if the insured would be entitled to either bad faith or statutory damages, the insurance company can't pursue those. They've gone so far as to say that in the case of American Zurich v. Barker Roofing, the insurance company tried to bring a claim on behalf of its insured for its uninsured losses, saying that it had a provision in its policy to reimburse the insured. And the court said, no, you cannot expand your segregation rights beyond the amount of money you paid. But all of those are amount of money you paid. And you're not disputing that Associated has paid some amount of money on behalf of or to Alpha Barnes, right? That's correct, Your Honor. Okay, so that's what gives them standing. And I don't remember the amount, or I don't know if that's in the record, but if it's $50,000, let's say, then that's all they could get out of this reformation case and all that kind of stuff. And that's all they're asking for. They're not asking for something else, something on behalf of the insured or something on behalf of someone else or anything. So how can you say – I mean, to me, this is a really hard case for me to understand how you're the appellee on it, because this is so fundamental that you as the insured give up your right to say, I don't want to sue my doctor. I love him. Well, I paid damages based on your doctor's malpractice. I'm sorry. I'm going to go sue your doctor. That's just kind of how that goes. And if you as the insured don't want something to happen, you've got to pay for it yourself. So I'm having a lot of trouble understanding how you can prevail on standing. I think you have a lot of merits defenses that sound pretty good, but that's for another day. And I don't know the answer to all of those, so I'm not prejudging it. But how can you say they can't stand in the shoes and try to recover the money they got from a different insurance company that allegedly, mutually, mistakenly failed to list this property? Well, Your Honor, the way we're saying it, one, is what the court said, is this is a substantial interest, and under Texas law, who has a right to actually bring a cause of action for reformation, which is an equitable remedy, is more limited than other potential causes of action, and it's people with substantial interests do not have that. Privity of contract is parties. And so the party, under your theory, you could never sue on any other contract. But the idea of privity of contract is associated is in privity with Alpha Barnes, who is a contracting party with Scottsdale. That's the argument. And the subrogation interest gives them that. And now there may be other facts, other stuff in the policy we don't know about. None of that was put before the district court, so we can't touch it. We know that what was pled gives them the stand in the shoes right, and that's all they're asking for, and they have that contractually. Your Honor, what I would say to that is under Texas law, there is nothing that has said subrogation equals privity. In fact, it's not the same as an assignment. There's a whole body of case law that basically creates an equitable right of subrogation or a contractual right of subrogation that prevent things like unjust enrichment and other problems where the insured has no incentive to have brought the claim. Here the insured had every incentive to have brought the claim. This was a big case. They had every possible exposure to excess exposure beyond the policy even that associate had paid. If they were looking for additional insurance, they could have tried to bring this claim. They did not. The case law, the case they cite, for example, out of New Jersey, which is one of the few cases that actually examines this issue, doesn't say insurance companies have privity. It says they have substantial interest, and that was enough to give them standing. You take that case and compare it to Texas law where it says substantial interest is not enough. It has to actually be true privity. And while I agree, yes, it says stand in the shoes, but stand in the shoes is a limited right. I don't understand how they're not in privity. They are. Associate International has a contract with Alpha Barnes that says we get your rights. That sounds like privity to me. That is what privity is. Privity is a matter of parties. That's when you say, well, this judgment in this case will be binding only on parties and their privies. Who's a privy? It's a person or a company. It's not a piece of paper. The privity that was assigned, though, was a limited privity or a limited right. I would not call it a privity. The right was only to the payment. It's a monetary right, not an equitable right. It doesn't give them a right to seek other equitable remedies. Reformation is an equitable remedy. Here they're trying to change a contract and leave Scottsdale and Alpha Barnes with the changed contract. And that has effects far beyond them just recovering their money. It could affect the aggregate limit. It affects the premiums charged. It affects ---- But those are really merits arguments that there shouldn't be. Because what if the facts show, which we don't know what they show. We don't even have the policy in the record. We have to go on their pleading, which says we have this right. Okay. But what if the evidence shows Scottsdale charged a premium that included this property? That would seem to be a bit of a winner for them. Had they had that evidence, it would have, I suspect, been flat. Well, they're not going to have that evidence because guess whose file it's in. It's in yours. And they haven't been able to develop that because they were thrown out on standing. So I'm just saying that they are really at a very almost before the beginning of the football game. I mean, this is everybody standing around doing the coin flip before we've ever even gone to the game. So we don't know how the game's going to turn out. But they're not even being allowed to stand there at the coin flip. That's really the argument that they're making. And, again, I mean I want to continue to keep an open mind to your argument and certainly to my colleagues' viewpoints, which may be very different from mine, but just as someone who's sort of lived insurance law and actually tried an insurance case in this building almost exactly 30 years ago, I'm struggling with that. And, Your Honor, there is no Texas case law on it. The Texas case law that says makes a distinction as to what the standing is for Reformation versus other types of standings says it cannot just be a substantial interest. There's case law in other jurisdictions that says it is a substantial interest. Here our argument falls on the issue that this has ramifications beyond their payment. There's not a lot more to it, quite frankly. Do you have anything else you want to say? Because I don't want to cut you off. Your argument about this problem that the other insurance company would be able to result in this reform contract that neither your client nor the insured wants, isn't the problem with that that they'll only be able to get reformation if they can prove to the court that this is what your client and the insured understood when they created the contract? They're not going to offer any evidence. No one cares what Associated thinks about what the contract should have been if we actually get to the merits of this case at some point. It's going to be what did your client understand and what did the insured understand, right? And now they are taking actions that put them in conflict with their own insured by asking them questions about their intent as to a contract. They are not a party to, a complete stranger to who the insured may or may not remember or know what their intent is, but there's financial pressure. The insured will say what the insured is going to say. They might not like it. You might, I mean. In some ways you can analogize to the anti-segregation doctrine where here they're trying to recover money at the expense of the insured's other coverage where the contract as written does not give that coverage. I think that would be the last point. As we said, there's one issue here. There's not a lot of case law in it, so I believe that's the point I have. Okay. Well, we appreciate it. Thank you. Appreciate the argument. Your Honor, if enjoying insurance law makes you nerdy and strange, you're in good company here. I assure you. Just to address a couple of the issues brought up during Scott Stahl's argument. The Merrimack case under Texas law, which does hold that privity is required to maintain a claim for reformation, that case did not involve subrogation. In fact, it did not involve an assignment of claims at all. In this case, the assignment is what creates the privity, and I think that's been addressed. The other issue I wanted to share with the Court, the Lumberman's case, which I didn't have a chance to reference earlier but was referenced by Scott Stahl, of all of our exhaustive research, that is the closest case, factually, that we could find to the case at hand. As Scott Stahl's attorney explained, in that case, the Court found the suing insurer had a substantial interest in the policy it sought to reform, and that, in that case, was enough for the New Jersey court to find standing. We recognize that that is not entirely consistent with Texas law. Texas law specifically requires privity. A substantial interest is not, on its own, sufficient. Now, the New Jersey court didn't say there is no privity. The New Jersey court just never got there. So it's not inconsistent with Texas law. In this case, while, yes, Associated does have a substantial interest, Associated also has privity, which we've already discussed. And I wanted to raise just a couple of issues from that Lumberman's case which I think underlie the policy considerations which support a finding of the right for Associated to at least pursue a claim for reformation here. In that case, the Court said, if a member of a burden-bearing group who carries more than his share is entitled to contribution from each shirking member, I'm not going to be calling names here, but entitled to contribution, then it should follow the true contract which imposed the basic obligation controls. And if reformation is called for to establish the correct terms, that remedy should be available to aid the claim for contribution. And that's what we're asking for here. We're asking for the claim for contribution, the claim to recover the amount paid by Associated, to be decided under the true terms of the Alpha Barnes Scottsdale policy. And the only way to get there is through a claim for reformation because the policy as bound did not include that property. And that's what we're asking from the Court today, is a remand so that we can develop those facts and obtain a finding one way or the other on the issue of mutual mistake. Well, thank you both for giving me a chance to read insurance cases. And your case is under submission, as are all the cases argued today. And we will resume tomorrow morning.